E-FILED
Tuesday, 07 July, 2026  04:12:51 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

FILED

JUL 07 2026

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 26-CR-200_33_ |
| | ) | |
| CAROL AMMONS and AARON | ) | Title 18, United States Code, |
| AMMONS, | ) | Sections 1001(a)(2), 1343, |
| | ) | 1512(k), and 1512(b)(3). |
| Defendants. | ) | |

## INDICTMENT

### COUNTS ONE and TWO
### (Wire Fraud)

**THE GRAND JURY CHARGES:**

1. Carol Ammons ("AMMONS") served as an Illinois State Representative from approximately 2015 to the present, and during this time, was a resident of Champaign County in the Central District of Illinois.

2. As a political candidate, AMMONS organized a political committee, Friends of Carol Ammons, which she registered with the Illinois State Board of Elections (ISBE) around 2013. AMMONS opened a bank account for the Friends of Carol Ammons into which campaign funds were deposited.

3. At all relevant times, the Illinois Campaign Disclosure Act required political committees to complete reports disclosing contributions, expenditures, and any outstanding debts of the committee during a specific reporting period. All transactions for the committee that had an aggregate value in excess of $150 were required to be itemized

on various schedules as part of the committee reports. The main report required to be filed with the ISBE was the Quarterly Report, using a D-2 form.

4.    The Illinois Campaign Disclosure Act prohibited certain types of expenditures of campaign funds, including payments to the candidate or his or her family unless for compensation for services actually rendered.

5.    As a state representative, AMMONS assisted local organizations in obtaining state grants. Under Illinois law, it is a conflict of interest for a person in a position of authority to benefit financially from a decision she could make in her official capacity, including through indirect benefits to family members or businesses with which the person is closely associated.

6.    For state fiscal year 2020, AMMONS, in her role as a state representative, caused a change in an appropriation for a state grant from the Urbana Neighborhood Connections Center, which served children from historically underserved neighborhoods, to Hood Vote Neighborhood Transformation ("Hood Vote"), which was focused on reentry and corrections reform. The total state grant to Hood Vote was approximately $605,431.

7.    AMMONS's daughter was associated with Hood Vote and eventually served as its Program Director. On or about April 2, 2021, AMMONS's daughter was paid approximately $3,326 in salary by Hood Vote out of the state grant appropriation. Thereafter, the State of Illinois informed AMMONS and Hood Vote that it was an impermissible conflict of interest for AMMONS's daughter to be paid out of the state grant funds. Consequently, Hood Vote discontinued paying AMMONS's daughter a salary.

2

### The Scheme to Defraud

8.    Beginning on or about 2017, and continuing until on or about June 15, 2025, in Champaign County, in the Central District of Illinois, and elsewhere,

**CAROL AMMONS,**

defendant herein, knowingly devised a scheme to defraud the State of Illinois, its taxpayers, and donors and contributors to her campaign and to obtain money and property by means of materially false pretenses, promises, and representations, including by omissions and the concealment of material information.

9.    It was a purpose and objective of the scheme that AMMONS enriched herself by converting contributions and donations to her campaign to her personal use. It was a further purpose and objective of the scheme that she concealed from ISBE and law enforcement authorities that she was engaging in such conversion of campaign funds for her personal benefit.

10.    It was also a purpose and objective of the scheme that AMMONS assisted local organizations in obtaining state grants that would benefit her and her daughter financially in violation of Illinois conflict of interest rules. It was a further purpose and objective of the scheme that she concealed from the public, state authorities, and law enforcement authorities that she and her daughter were benefitting financially from state grants that she had a role in obtaining for local organizations.

11.    As part of the scheme, from approximately 2017 through December of 2022, AMMONS caused funds from her Friends of Carol Ammons campaign account to be paid

3

to herself and to family members that were not legitimate payments for services actually rendered to her political committee.

12.    It was a further part of the scheme that, to avoid detection of the payments to herself, AMMONS caused checks to be issued to an individual in excess of the amount for services actually rendered. AMMONS then required the individual to provide cash kickbacks to her, sometimes referred to as "gifts."

13.    As part of the scheme, AMMONS paid her daughter approximately $600 per month from her Friends of Carol Ammons campaign fund, totaling approximately $15,585, not in proportion with services actually rendered.

14.    As a further part of the scheme, AMMONS caused materially false D-2 forms to be filed with ISBE, falsely stating the nature, purpose, and amount of expenditures from the Friends of Carol Ammons account, including entirely omitting certain payments, which concealed her conversion of campaign funds for her personal benefit.

15.    It was part of the scheme that the D-2 forms did not disclose the illegal cash payments to AMMONS. The D-2 forms falsely classified certain expenditures as mileage reimbursements that were later paid back to AMMONS in cash. The D-2 forms omitted certain payments to AMMONS's family members. Between January of 2019 and November of 2020, the D-2 forms failed to disclose over $25,000 in payments to individuals, a portion of which were paid back to AMMONS in cash. Between March of 2021 and August of 2022, the D-2 forms falsely claimed payments totaling over $15,000 were paid to a consulting firm, when in fact, they were paid to an individual who paid a portion back to AMMONS in cash.

4

16.     As part of the scheme, AMMONS caused state grant funds to be paid to herself and her daughter. AMMONS did not assist Hood Vote in renewing its state grant for state fiscal year 2021 after she learned that it could not pay her daughter out of the state grant. As part of the scheme, AMMONS assisted Bridgewater Sullivan Community Life Center ("Bridgewater") in obtaining state grants in state fiscal year 2021 totaling approximately $612,000, recommended individuals for employment with Bridgewater, and assisted Bridgewater in drafting her daughter's employment contract with Bridgewater. To avoid detection of the payments to herself, AMMONS required an individual to provide cash kickbacks to AMMONS, sometimes referred to as "gifts," which were paid out of Bridgewater's state grant.

17.     As part of the scheme, between August of 2021 and May of 2023, AMMONS's daughter was paid over $60,000 as a Program Director for Bridgewater out of the state grant, although AMMONS knew full well it was a conflict of interest for her daughter to be paid out of state grants that she had initiated and facilitated.

18.     As part of the scheme, AMMONS assisted the Urbana-Champaign Independent Media Center ("IMC"), where she previously worked, with obtaining over $1 million in state grants in 2021 and 2022, including a $700,000 member initiative funded by the federal American Rescue Plan Act. From July to October of 2022, while working full-time as the Program Director for Bridgewater and as an Intermittent Public Service Representative with the Illinois Secretary of State, AMMONS's daughter was paid approximately $9,990 by IMC as a digital marketing coordinator, a position which was funded by the state grant that AMMONS facilitated.

19.    As a result of the scheme, AMMONS and her daughter received financial benefits in excess of $100,000.

**Execution of the Scheme**

20.    On or about the dates set forth below, in Champaign County in the Central District of Illinois, and elsewhere,

**CAROL AMMONS,**

defendant herein, for the purposes of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, sounds, and images, that is, electronic mail assisting Bridgewater Sullivan Community Life Center with obtaining a state grant and employing AMMONS's daughter, as identified below:

| Count | Date | From | Subject |
| --- | --- | --- | --- |
| 1 | 7/15/2021 | carol@staterepcarolammons.com | Fwd: Faith Based Housing Awareness and Assistance Program |
| 2 | 7/29/2021 | carolammons@gmail.com | Employment Contract for BSCLC |

In violation of Title 18, United States Code, Sections 1343 and 2.

6

## COUNTS THREE to FIVE
### (Wire Fraud)

**THE GRAND JURY CHARGES:**

1.    The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 19 of Counts One and Two of this Indictment as though fully set forth herein.

### Execution of the Scheme

2.    On or about the dates set forth below, in Champaign County in the Central District of Illinois, and elsewhere,

## CAROL AMMONS,

defendant herein, for the purposes of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, sounds, and images, that is, the direct deposit of payments from Bridgewater Sullivan Community Life Center, funded by a state grant initiated and facilitated by AMMONS, to an individual's University of Illinois Community Credit Union account, from which a portion was withdrawn in cash and transferred to AMMONS:

| Count | Date | Deposit Amount |
|-------|------|----------------|
| 3 | 6/17/2022 | $500 |
| 4 | 10/20/2022 | $700 |
| 5 | 12/2/2022 | $500 |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS SIX to EIGHT
### (Wire Fraud)

**THE GRAND JURY CHARGES:**

1.      The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 19 of Counts One and Two of this Indictment as though fully set forth herein.

### Execution of the Scheme

2.      On or about the dates set forth below, in Champaign County in the Central District of Illinois, and elsewhere,

### CAROL AMMONS,

defendant herein, for the purposes of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, sounds, and images, that is, cellular telephone text messages from AMMONS to an individual regarding illegal cash payments from the Bridgewater Sullivan Community Life Center state grant initiated and facilitated by AMMONS:

| Count | Date | Message from AMMONS |
|---|---|---|
| 6 | 6/18/2022 | What's up? Gift |
| 7 | 10/20/2022 | I'm home now but can catch you before board at the county building at 6 to grab the gift |
| 8 | 12/2/2022 | Hey you dropping my gift off today? |

In violation of Title 18, United States Code, Sections 1343 and 2.

8

## COUNT NINE
**(False Statement)**

**THE GRAND JURY CHARGES:**

On or about May 21, 2024, in Champaign County, in the Central District of Illinois,

**CAROL AMMONS,**

defendant herein, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating to a Special Agent of the Federal Bureau of Investigation that she had no knowledge regarding a conflict of interest with Hood Vote Neighborhood Transformation paying her daughter from a state grant, when AMMONS knew full well that individuals from the State of Illinois and Hood Vote Neighborhood Transition had previously discussed the conflict of interest with AMMONS.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT TEN
**(Conspiracy to Obstruct Justice)**

**THE GRAND JURY CHARGES:**

1.      The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 19 of Counts One and Two of this Indictment as though fully set forth herein.

2.      From at least on or about May 21, 2024, and continuing through at least June 15, 2025, in Champaign County, in the Central District of Illinois, and elsewhere,

**CAROL AMMONS**
**and**
**AARON AMMONS,**

9

defendants herein, knowingly and intentionally conspired with each other and others, both known and unknown to the grand jury, to engage in misleading conduct toward another person with the intent to hinder and prevent the communication to a federal law enforcement officer of information relating to the commission and possible commission of a federal offense, namely, wire fraud as set forth in Counts One through Eight of this Indictment.

3.    In furtherance of the conspiracy, the conspirators committed the following overt acts:

a.    On or about May 24, 2024, Carol Ammons, with Aaron Ammons present, falsely claimed to a Special Agent of the Federal Bureau of Investigation that she had no knowledge regarding a conflict of interest with Hood Vote paying her daughter from a state grant.

b.    On or about February 17, 2025, Aaron Ammons advised a potential witness that there is "nothing illegal" about friends giving friends money regarding illegal cash kickbacks paid to Carol Ammons from the Friends of Carol Ammons political committee. Aaron Ammons communicated with the potential witness on a paper note that Aaron Ammons destroyed after showing it to the potential witness.

c.    On or about April 21, 2025, with Carol Ammons present, Aaron Ammons advised a potential witness that they should communicate in code words about the ongoing federal investigation and that Aaron Ammons would look into cash deposits that Carol Ammons made around the dates that she received illegal cash kickbacks.

10

d.    On or about June 9, 2025, with Carol Ammons present, Aaron Ammons asked a potential witness about illegal cash payments given to Carol Ammons before directing the witness to "muddy the waters" with the Federal Bureau of Investigation to obstruct its ability to trace the illegal cash payments to Carol Ammons.

In violation of Title 18, United States Code, Sections 1512(k), 1512(b)(3), and 2.

## COUNT ELEVEN
### (Obstruction of Justice)

**THE GRAND JURY CHARGES:**

1.    The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 19 of Counts One and Two of this Indictment as though fully set forth herein.

2.    On or about June 9, 2025, in Champaign County, in the Central District of Illinois,

**AARON AMMONS,**

defendant herein, knowingly and intentionally engaged in misleading conduct toward another person with the intent to hinder and prevent the communication to a federal law enforcement officer of information relating to the commission and possible commission of a federal offense, namely, wire fraud as set forth in Counts One through Eight of this Indictment, in that Aaron AMMONS knowing and intentionally directed a potential witness to "muddy the waters" with the Federal Bureau of Investigation to obstruct its ability to trace illegal cash payments to Carol Ammons.

11

In violation of Title 18, United States Code, Sections 1512(b)(3) and 2.

A TRUE BILL.

s/ redacted

FOREPERSON

s/ redacted

GREGORY M. GILMORE
United States Attorney
ELM

12