E-FILED
Friday, 06 November, 2026 10:26:28 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 26-CR-20033 |
| | ) | |
| CAROL AMMONS and AARON AMMONS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**THE UNITED STATES OF AMERICA'S RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS INDICTMENT**

NOW COMES the United States of America, by Gregory M. Gilmore, United States Attorney for the Central District of Illinois, and Eugene L. Miller, Assistant United States Attorney, and hereby requests that this Court deny the defendant's motion to dismiss the indictment, R. 54, filed pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, because the indictment is not defective.

**SUMMARY**

Carol Ammons's[1] motion to dismiss the indictment is without merit. Essentially, she moves to dismiss charges that she wished she faced, rather than the charges contained in the indictment. Each of the charged counts closely tracks the relevant statutes, includes all essential elements of the charges, and apprises Ammons of the

[1] Co-defendant Aaron Ammons joined in portions of Carol Ammons's motion to dismiss on November 4, 2026. R. 56. The Court directed the United States to respond to his motion to dismiss on or before November 18, 2026. Thus, this response focuses solely on the indictment against Carol Ammons, referring to her hereinafter as Ammons.

nature of the charges so that she can prepare a defense. Notably, Ammons's motion to dismiss ignores the allegations that her wire fraud scheme involved personally receiving illegal cash kickbacks from both her campaign fund and state grants.[2] Instead, her motion focuses only on the allegations that she obtained money for her daughter from state grants and argues that it was perfectly fine for her to initiate and facilitate state grants to give her daughter a paying job. Moreover, she treats those allegations as honest services fraud under 18 U.S.C. § 1346 rather than part of the overarching wire fraud scheme under 18 U.S.C. § 1343. Having set up the honest services fraud straw man, her motion attempts to knock it down by citing cases that hold that simply laboring under a conflict of interest does not constitute honest services fraud. Her motion should be denied.

## INTRODUCTION

A federal grand jury in the Central District of Illinois charged Ammons in ten counts with engaging in a wire fraud scheme, making false statements, and conspiring to obstruct justice. R. 1. The first nineteen paragraphs detail the wire fraud offense and allege that she devised a scheme to defraud the State of Illinois, its taxpayers, and donors and contributors to her campaign and to obtain money by several means, including by fraudulently (1) converting contributions to her campaign to her personal use through illegal cash kickbacks to Ammons and payments to her daughter for services not

[2] Her motion to dismiss conspicuously fails to acknowledge those serious allegations, other than blithely dismissing them as "unrelated schemes irrelevant to the charges." R. 54 at 2, 3, and 8.

rendered; and (2) assisting local organizations in obtaining state grants to benefit herself and her daughter through illegal cash kickbacks to Ammons and employment of her daughter. The indictment further alleges as part of the wire fraud scheme that she caused materially false quarterly reports to be filed with the Illinois State Board of Elections and that she omitted and concealed a known conflict of interest in paying her daughter from state grants that Ammons initiated and facilitated.

The indictment charges eight separate executions of the wire fraud scheme, including: (1) e-mails where Ammons assisted Bridgewater Sullivan Community Life Center with obtaining a state grant and employing her daughter (Counts 1-2); (2) the deposit of payments from Bridgewater to an individual who paid cash kickbacks from the grant to Ammons (Counts 3-5); and (3) texts from Ammons requesting the illegal kickbacks, referred to as "gifts" (Counts 6-8).

The indictment further alleges that Ammons made false statements to an FBI special agent investigating the scheme, namely, that she falsely claimed that she had no knowledge of any conflict of interest with a local organization, Hood Vote Neighborhood Transformation, paying her daughter from a state grant when the conflict had previously been discussed with her by both the State of Illinois and Hood Vote (Count 9). Finally, the indictment alleges that Ammons conspired with her husband to obstruct justice by engaging in misleading conduct toward another person to prevent the FBI from learning about her wire fraud scheme (Count 10).

Ammons's motion to dismiss each of these counts is without merit. As to each charged count, the indictment tracks the language of the relevant statutes, sufficiently

states the elements of the crime charged, adequately apprises Ammons of the nature of the charge so that she may prepare a defense, and allows Ammons to plead the judgment as a bar to any future prosecutions. Her motion to dismiss inconsistently suggests that the wire fraud count charges multiple federal offenses, on one hand, and no federal offenses, on the other hand. Neither contention is correct. Her motion to dismiss the indictment should be denied.

**RELEVANT LAW**

Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure allows a defendant to challenge the sufficiency of an indictment "without a trial on the merits" by arguing that the indictment fails to state an offense. On a motion to dismiss, "[a]n indictment is reviewed on its face, regardless of the strength or weakness of the government's case." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010); *see also United States v. Moore*, 563 F.3d 583, 585-86 (7th Cir. 2009) ("Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence.").

Rule 7(c)(1) of the Federal Rules of Criminal Procedure states that the "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . . " Applying this rule, the Seventh Circuit has noted that "[a]n indictment need not say much to be deemed sufficient." *Moore*, 563 F.3d at 585. An indictment is sufficient if it: (1) states the elements of the crime charged; (2) adequately apprises the defendant of the nature of the charge so that she may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future

prosecutions. *Id.*; *United States v. Nayak*, 769 F.3d 978, 979–80 (7th Cir. 2014). In making this determination, courts look at the contents of an indictment on a practical basis in its entirety, rather than in a hyper technical manner. *United States v. Castaldi*, 547 F.3d 699, 703 (7th Cir. 2008); *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002).

Thus, federal courts uphold indictments as "usually sufficient" when they use the language of the statute when setting forth the offense and unambiguously set out all the elements necessary to constitute the offense. *United States v. Webster*, 125 F.3d 1024, 1029 (7th Cir. 1997) (citations omitted); *see also White*, 610 F.3d at 958-59 (denying motion to dismiss because an indictment that "'tracks' the words of a statute to state the elements of the crime is generally acceptable"). A defendant must demonstrate prejudice from any alleged deficiency in the indictment. *Castaldi*, 547 F.3d at 703. In fact, the Seventh Circuit has noted that the Supreme Court "praised as a 'salutary development in the criminal law,' the fact that '[c]onvictions are no longer reversed because of minor and technical deficiencies [in the indictment] which did not prejudice the accused.'" *Webster*, 125 F.3d at 1029 (quoting *Russell v. United States*, 369 U.S. 749, 763 (1962)).

An indictment need not include "every factual nugget necessary for conviction," but merely must provide the defendants with "some means of pinning down the specific conduct at issue." *United States v. Fassnacht*, 332 F.3d 440, 445 (7th Cir. 2003) (citing *United States v. Smith*, 230 F.3d 300, 305-06 (7th Cir. 2000)). When evaluating the sufficiency of an indictment, a court focuses only on its allegations, which it must accept as true. *Nayak*, 769 F.3d at 979; *Moore*, 563 F.3d at 586.

# ARGUMENT

## I. Counts One Through Eight of the Indictment Sufficiently Allege Wire Fraud

### A. The Indictment Tracks the Language of the Wire Fraud Statute

The federal grand jury charged Ammons with violating the federal wire fraud statute at 18 U.S.C. § 1343:

> Whoever, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted my means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

Counts One through Eight of Ammons's indictment tracks the language of the statute, stating, in relevant part, that Ammons:

> [K]knowingly devised a scheme to defraud the State of Illinois, its taxpayers, and donors and contributors to her campaign and to obtain money and property by means of materially false pretenses, promises, and representations, including by omissions and the concealment of material information . . . and for the purposes of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses representations, and promises, did knowingly cause to be transmitted by mean of wire communications in interstate commerce, certain writings, signs, signals, sounds, and images, that is electronic mail . . . direct deposit of payments . . . [and] cellular telephone text messages.

R. 1, Counts One and Two ¶¶ 8 & 20, Counts Three to Five ¶ 2, and Counts Six to Eight ¶ 2. The wire fraud counts track the language of the wire fraud statute. Ammons has not identified any relevant portion of the statute that is not alleged in the indictment. Her motion to dismiss is without merit. *See White*, 610 F.3d at 959 (reversing district court's dismissal of indictment that tracked the language of the statute).

B. The Indictment Includes the Elements of Wire Fraud

The Seventh Circuit defines the elements of wire fraud as follows:

> 1. That the defendant knowingly devised or participated in a scheme to defraud, as described in Counts One through Eight; and
>
> 2. That the defendant did so with the intent to defraud; and
>
> 3. The scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and
>
> 4. That for the purpose of carrying out the scheme, the defendant caused interstate wire communications to take place in the manner charged in the particular count.

The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit (2025 Ed.) (hereinafter, "Bauer Pattern Instructions"), 18 U.S.C. §§ 1341 & 1343 Mail/Wire/Carrier Fraud – Elements, p. 636.

Ammons's motion to dismiss does not argue that the indictment fails to allege the second or fourth elements above. Regarding the first and third elements, her motion focuses exclusively on a single alleged purpose and objective of Ammons's overarching scheme to defraud, namely, "assisting organizations in obtaining grants to benefit herself and her daughter financially in violation of Illinois conflict of interest rules." R. 1, Counts One to Eight, ¶ 10.

1. Allegations of misuse of campaign funds

Ammons's motion ignores the other purposes and objectives alleged in the other paragraphs of the indictment, including,

> [T]hat AMMONS enriched herself by converting contributions and donations to her campaign to her personal use [and] that she concealed from ISBE and law

> enforcement authorities that she was engaging in such conversion of campaign funds for her personal benefit.

R. 1, Counts One to Eight, ¶ 9. Unfortunately, false representations by local politicians regarding the personal use of campaign funds have long been a common circumstance resulting in federal wire or mail fraud charges.[3]

The indictment further alleges that "[a]s part of the scheme, AMMONS paid her daughter approximately $600 per month from her Friends of Carol Ammons campaign fund, totaling approximately $15,585, not in proportion with services actually rendered." R. 1, ¶ 13. The federal wire fraud statute also has been held to encompass schemes to funnel campaign funds to family members where the payments do not correspond to the services provided. *See, e.g.*, *United States v. Reed*, 908 F.3d 102, 109 (5th Cir. 2018)

---

[3] *See, e.g.*, *United States v. Henningsen*, 387 F.3d 585, 589–90 (7th Cir. 2004) (affirming fraud conviction of local politician who diverted campaign donations to personal use and failed to disclose in campaign finance reports); *United States v. Blandford*, 33 F.3d 685, 701-02 (6th Cir. 1994) (same); *United States v. Curry*, 681 F.2d 406, 411-14 (5th Cir. 1982) (same); *United States v. McCann*, No. 21-cr-30014-CRL-EIL, Docket 104 (C.D. Ill. July 11, 2024) (entry of judgment of conviction for wire fraud for misuse of campaign funds); *United States v. Fiore*, 779 F. Supp. 3d 1160, 1190 (D. Nev. 2025) (denying motion for acquittal of wire fraud convictions of local politician who misused contributions); *United States v. Williams*, 2017 WL 2713403, at *4 (E.D. Pa. June 5, 2017) (denying motion to dismiss indictment after finding that the grand jury adequately charged wire fraud by alleging that the local official violated state election laws by using Political Action Committee funds for his personal use); *United States v. Fullwood*, 2016 WL 5106940, at *6 (M.D. Fla. Sept. 20, 2016) (denying motion to dismiss indictment because "*Henningsen* is persuasive authority that the purported solicitation of campaign funds for personal use can constitute the offense of wire fraud"); *United States v. Reed*, 2015 WL 5944333, at *7 (E.D. La. Oct. 13, 2015) (denying motion to dismiss indictment of local district attorney because "alleged misconduct is sufficient to satisfy the 'scheme to defraud' element under 18 U.S.C. § 1343"); *United States v. Delle Donna*, 552 F. Supp. 2d 475, 483-87 (D.N.J. 2008), *aff'd* 366 Fed. App'x 441 (3d Cir. 2010) (denying motion to dismiss indictment alleging that mayor committed mail fraud by subverting funds intended for his political action committee and making false representations in reports required by state law).

(affirming wire fraud conviction of local official for scheme to funnel campaign funds to his adult child).

Finally, the indictment alleges that Ammons caused materially false forms to be filed with ISBE to conceal the fraud. R. 1, Counts One to Eight, ¶¶ 14-15. Ammons's motion to dismiss does not argue, let alone make a persuasive case, that the allegations that she devised a scheme to funnel campaign funds to herself and her daughter for personal use, and caused materially false statements and omissions to be made in her state campaign filings, fail to state a federal wire fraud offense.[4] Thus, her motion to dismiss Counts One through Eight must be denied.

2. Allegations of misuse of state grants

In addition to Ammons's misuse of campaign funds, the indictment alleges that Ammons's scheme to defraud included obtaining money for herself and her daughter from state grants that she had a role in obtaining. R. 1, Counts One to Eight, ¶ 10. Ammons suggests that it is impermissible to charge her state grant misconduct in the same scheme to defraud as her misconduct related to her misuse of campaign funds.[5] Ammons is mistaken.

---

[4] "In considering whether the government has proven a scheme to defraud, the government must prove that one or more of the false or fraudulent pretenses, representations or promises charged in the portion of the indictment describing the scheme be proved beyond a reasonable doubt. The government, however, is not required to prove all of them." Bauer Pattern Instructions, 18 U.S.C. §§ 1341 & 1343 Proof of Scheme, p. 646. Thus, the allegation that Ammons caused materially false forms to be filed with the ISBE is sufficient in and of itself to state this element of the offense of wire fraud.

[5] Ammons represents that she "is filing a separate motion to dismiss for duplicity." R. 54 at 8. To date, no such motion has been filed.

A single wire fraud charge may include multiple means by which an overarching scheme was accomplished. *See United States v. Davis*, 471 F.3d 783, 790 (7th Cir. 2006) (citing *United States v. Berardi*, 675 F.2d 894, 897–98 (7th Cir. 1982)). Moreover, even though the grand jury here charged one overarching scheme, a wire fraud charge may also include multiple schemes. *See Davis*, 471 F.3d at 790 (affirming conviction on single fraud count carried out through three separate schemes). In fact, the Seventh Circuit contemplates a single wire fraud indictment alleging either multiple means by which the overarching scheme was committed or "multiple schemes." Bauer Pattern Instructions, 18 U.S.C. §§ 1341 & 1343 Definition of "Scheme to Defraud," p. 642-43. As it did in this case, the United States has the discretion to charge separate events as different means for carrying out an overarching scheme to defraud. *See, e.g., United States v. O'Brien*, 953 F.3d 449, 455 (7th Cir. 2020) (finding district court properly denied defendant's motion to dismiss count charged as a single overarching scheme to defraud involving multiple transactions).

Here, the indictment alleges two different sources where Ammons obtained money as part of her overarching scheme to defraud, and for each source, two similar means of obtaining that money. The first alleged source of money was Ammons's campaign fund, Friends of Carol Ammons. The indictment alleges she fraudulently obtained money from that fund: (1) for herself by requiring kickbacks from an individual paid from the fund; and (2) for her daughter by paying for services not rendered. The second source of money was state grants initiated and facilitated by Ammons. The indictment alleges she fraudulently obtained money from the grants: (1) for herself by

requiring kickbacks from an individual paid out of the grants; and (2) for her daughter by employing her by omitting and concealing a known conflict of interest.[6]

Ammons spends the entirety of her argument to dismiss the wire fraud charges focusing solely on the allegations related to funneling state grant money to her daughter. She argues that these wire fraud allegations violate federalism and due process based on cases involving allegations of honest services fraud that are not at issue here. R. 54 at 3-15. Thus, Ammons's argument misses the mark.

a. The indictment alleges deception

Ammons argues that the indictment does not sufficiently allege deception, namely, that it does not allege that Ammons's scheme to defraud involved a materially false or fraudulent pretense, representation, or promise, as required by the third element of the Seventh Circuit's pattern instruction. R. 54 at 5-8. Ammons's argument fails from the start because the indictment alleges a number of false representations regarding the false forms Ammons caused to be filed with the Illinois State Board of Elections. *See* R. 1, Counts One to Eight, ¶¶ 14-15. Undeterred, Ammons asks the Court to ignore these allegations as supposedly irrelevant to the charged scheme. Ammons may bury her head in the sand, but this Court should not. The grand jury has sufficiently alleged deception regarding the false forms filed with ISBE.

[6] As will be discussed more fully, *infra*, the indictment does not require a jury to find that there was a conflict of interest under Illinois law. The indictment alleges that the State of Illinois told Ammons that there was a conflict of interest in paying her daughter from a state grant, and therefore, as part of her scheme to defraud, Ammons omitted and concealed that fact from others to obtain money for her daughter in a subsequent grant.

Nonetheless, even ignoring the ISBE allegations, the grand jury also has sufficiently alleged false representations regarding Ammons initiating and facilitating state grants for the purpose of employing her daughter. Tracking the statute, the indictment alleges that Ammons "knowingly devised a scheme to defraud the State of Illinois, its taxpayers . . . and to obtain money and property by means of materially false pretenses, promises, and representations, including by omissions and the concealment of material information." R. 1, Counts One to Eight, ¶ 8. The Bauer Pattern Instructions make clear that "[a] materially false or fraudulent pretense, representation, or promise may be accomplished by an omission or the concealment of material information." Bauer Pattern Instructions, 18 U.S.C. §§ 1341 & 1343 Definition of "Scheme to Defraud," p. 642.

The indictment further alleges the specific omissions and concealment related to the misuse of the state grants: "It was a further purpose and objective of the scheme that she concealed from the public, state authorities, and law enforcement authorities that she and her daughter were benefitting financially from state grants that she had a role in obtaining for local organizations." R. 1, Counts One to Eight, ¶ 10. Ammons's argument that the indictment fails to allege material omissions and concealment regarding her misuse of state grants is frivolous.

Ammons goes on to argue, however, that there could not have been false omissions and concealment because -- despite the grand jury's allegation that Ammons "assisted local organizations in obtaining state grants that would benefit her and her daughter financially in violation of Illinois conflict of interest rules" -- there was no conflict of interest in Ammons initiating and facilitating state grants that employed and

financially benefited her daughter. R. 54 at 5-8. Ammons is free to make this argument to the jury, but at this stage, the Court must accept the allegations of the indictment as true. *Nayak*, 769 F.3d at 979; *Moore*, 563 F.3d 583, 585-86 (7th Cir. 2009) ("Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence.").

Importantly, the indictment does not simply allege a technical conflict of interest of which Ammons may or may not have been aware. It specifically alleges that

> AMMONS's daughter was associated with Hood Vote and eventually served as its Program Director. On or about April 2, 2021, AMMONS's daughter was paid approximately $3,326 in salary by Hood Vote out of the state grant appropriation. Thereafter, the State of Illinois informed AMMONS and Hood Vote that it was an impermissible conflict of interest for AMMONS's daughter to be paid out of the state grant funds. Consequently, Hood Vote discontinued paying AMMONS's daughter a salary.

R. 1, Counts One to Eight, ¶ 7. Thus, the grand jury did not interpret any state conflict of interest rule, nor will a trial jury be required to do so. Instead, the indictment alleges that the State of Illinois itself informed Ammons of the impermissible conflict of interest, which resulted in Hood Vote discontinuing paying Ammons's daughter.

The indictment then alleges that, after Ammons learned Hood Vote could not pay her daughter out of the state grant, she did not assist it in renewing its state grant, and as part of her scheme, assisted Bridgewater Sullivan Community Life Center in obtaining a state grant and employing her daughter. R. 1, Counts One to Eight, ¶ 16. The indictment continues that, as part of the scheme, Ammons's daughter was paid over $60,000 by Bridgewater out of the state grant, "although AMMONS knew full well it was a conflict of interest for her daughter to be paid out of state grants that she had initiated and

facilitated."[7] *Id.* ¶ 17. Importantly, an omission or concealment may constitute wire fraud even without a state statute or regulation requiring disclosure:

> The mail/wire fraud statutes do not include the words "omission" or "concealment," but cases interpreting the statutes hold that omissions or concealment of material information may constitute money/property fraud, without proof of a duty to disclose the information pursuant to a specific statute or regulation. *See United States v. Powell*, 576 F.3d 482, 490, 492 (7th Cir. 2009); *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005); *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 868 (7th Cir. 1998); *United States Biesiadecki*, 933 F.2d 539, 543 (7th Cir. 1991); *United States v. Keplinger*, 776 F.2d 678, 697-98 (7th Cir. 1985); *see also United States v. Colton*, 231 F.3d 890, 891-901 (4th Cir. 2000).

Bauer Pattern Instructions, 18 U.S.C. §§ 1341 & 1343 Definition of "Scheme to Defraud," p. 643.

The indictment alleges Ammons's omission of the conflict of interest the State of Illinois identified to her; the Seventh Circuit has held that a half-truth or failure to give the whole story is the "same thing" as an omission that is actionable under the wire fraud statute:

> Turning to the remaining statutory language, we analyze whether real, at-risk orders placed with the intent to cancel amount to "means of false or fraudulent pretenses, representations, or promises" as stated in 18 U.S.C. § 1343. At the outset, we note that "false representation" encompasses a range of conduct. Beyond affirmative misrepresentations a defendant knows to be false, the Supreme Court has explicitly held that a material omission can amount to wire fraud. *See Neder*, 527 U.S. at 24–25, 119 S.Ct. 1827. Failure to give the whole story may also be fraud, especially when a defendant actively conceals information. *Powell*, 576 F.3d at 491. Finally, "[a] half truth, or what is usually the same thing [as] a misleading omission, is actionable as fraud . . . if it is intended to induce a false belief and resulting action to the advantage of the misleading and the disadvantage of the misled." *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005) (some alterations in original)

---

[7] The allegation that Ammons knew full well that it was a conflict of interest to pay her daughter out of the state grants because the State of Illinois told her that a conflict of interest existed removes Ammons's stated concern that "individuals are left to guess as to what conduct is criminalized" and "there are numerous nuanced definitions for conflicts of interest." R. 54 at 15.

> (quoting *Emery v. Am. Gen. Fin.*, 71 F.3d 1343, 1346 (7th Cir. 1995)). An implied misrepresentation is simply an omission by another name.

*United States v. Chanu*, 40 F.4th 528, 541 (7th Cir. 2022) (affirming district court's denial of motion to dismiss wire fraud indictment).

Thus, the gravamen of the indictment is that Ammons knew there was a conflict of interest because the State of Illinois told her so in relation to one state grant and that she devised a scheme to omit and conceal this fact and to pay her daughter out of a subsequent state grant anyway. The indictment sufficiently alleges deception by Ammons.

b. The indictment alleges property fraud

Ammons also argues that the indictment fails to allege that the object of the scheme was to obtain money or property. R. 54 at 8. This argument also fails because the indictment specifically alleges that she "caused state grant funds to be paid to herself and her daughter" and that "[t]o avoid detection of the payments to herself, AMMONS required an individual to provide cash kickbacks to Ammons, sometimes referred to as 'gifts,' which were paid out of Bridgewater's state grant." R.1, Counts One to Eight, ¶ 16. Again, Ammons asks the Court to ignore these allegations as supposedly irrelevant to the charged scheme because they undermine her argument that the indictment does not allege that an object of her scheme was to obtain money or property. These allegations not only should not be ignored, they must be accepted as true in judging the merits of Ammons's motion to dismiss.

These allegations aside, the grand jury also has sufficiently alleged that an object of the scheme included obtaining money and property for her daughter, that is, a job and salary with Bridgewater. Ammons misunderstands federal wire fraud law when she argues that the indictment is insufficient because "there is no indication that Rep. Ammons's daughter did not perform her job duties for Bridgewater," R. 54 at 8, and that it does not allege that the State of Illinois "would have paid a lower salary to someone other than Rep. Ammons's daughter," R. 54 at 11. Neither such allegation is required under the wire fraud statute to state an offense.

In fact, Ammons's argument flies in the face of the Supreme Court's recent unanimous decision in *Kousisis v. United States*, 605 U.S. 114, 123–24 (2025). *Kousisis* held that it does not matter for purposes of obtaining money or property under the wire fraud statute whether Ammons's daughter performed the job her mother helped her obtain or if someone else could have been employed at a lower salary:

> [The defendants'] view rests on the premise that a scheme cannot constitute wire fraud if, as here, the defendant provides something—be it money, property, or services—of equal value in return. But the statute says otherwise. To "obtain" something means "to gain or attain possession" of it, usually "by some planned action or method." Webster's Third New International Dictionary 1559 (2002). A thing is no less "obtained" simply because something else is simultaneously given in return. An art collector who acquires a rare sculpture can rightfully say that she "obtained" it, notwithstanding the six-figure price tag. And because the meaning of "obtain" does not turn on the value of the exchanged items, the art collector can still say that she "obtained" the sculpture even if it was not objectively worth the price she paid.
>
> In short, the wire fraud statute is agnostic about economic loss. The statute does not so much as mention loss, let alone require it. Instead, a defendant violates § 1343 by scheming to "obtain" the victim's "money or property," regardless of whether he seeks to leave the victim economically worse off. A conviction premised on a fraudulent inducement thus comports with § 1343.

*Id.* at 123–24.

The Seventh Circuit has interpreted *Kousisis* as holding that "schemes to defraud a government in order to secure valuable contracts or jobs also qualify as a deprivation of property under the fraud statutes." Bauer Pattern Instructions, 18 U.S.C. §§ 1341 & 1343 Definition of "Scheme to Defraud," p. 645 (citing *Kousisis*, 145 S. Ct. at 1391-92, 1398 (endorsing fraudulent-inducement theory and holding that a defendant who fraudulently induces a victim to enter into a contract may be convicted of wire fraud even if the defendant did not seek to cause a economic loss to the victim) and *United States v. Sorich*, 523 F.3d 702, 711-13 (7th Cir. 2008) (holding that "jobs are property for purposes of mail fraud" and that defendants cheated municipality out of "qualified civil servants" due to a "massive scheme to defraud" based on "patronage and cronyism")).

Ammons's reliance on *Cleveland v. United States*, 531 U.S. 12, 15 (2000) and *Kelly v. United States*, 590 U.S. 391, 398 (2020) is misplaced. Those cases involved a state gambling license and traffic-regulation decision, respectively, that the Supreme Court found were not property, versus the job and salary obtained here that the courts have found are property and money. *See, e.g.*, *United States v. Leahy*, 464 F.3d 773, 787 (7th Cir. 2006) (distinguishing *Cleveland* and holding that object of fraud committed against municipality was "money, plain and simple"). The indictment sufficiently charges a wire fraud offense by alleging that Ammons defrauded the State of Illinois and obtained money and property for her daughter by securing her a job paid by a state grant while omitting and concealing the known conflict of interest.

c. The wire fraud charge does not raise the federalism and due process concerns associated with honest services fraud

In the legal and factual context of the allegations in this case, Ammons's reliance on *McDonnell v. United States*, 579 U.S. 550, 577 (2016), *Skilling v. United States*, 561 U.S. 358 (2010), *McNally v. United States*, 483 U.S. 350 (1987), and their progeny is misplaced. The United States does not disagree with Ammons's assessment that those cases express federalism concerns with using the honest services fraud statute, 18 U.S.C. § 1346, to regulate ethical standards for state and local officials. Those federalism concerns are not at issue, however, when a state or local politician is charged only with obtaining money and property by means of false representations, rather than depriving citizens of the intangible right to honest services.

Although Ammons's brief cites various Supreme Court cases, it fails to cite the Supreme Court's most recent guidance addressing, and rejecting, federalism concerns under the federal wire fraud statute:

> [The defendants] warn of the consequences that will ensue if we endorse the fraudulent-inducement theory. "Under the theory," they say, "every intentional misrepresentation designed to induce someone to transact in property would constitute property fraud." In their view, this result threatens fair notice and, by encroaching into States' police powers, runs headlong into principles of federalism.
>
> We are not persuaded. The "demanding" materiality requirement substantially narrows the universe of actionable misrepresentations. And the boundaries of the fraudulent-inducement theory are not so imprecise as to risk encroachment on States' authority or to "create traps" for the "unwary." Rather, the theory criminalizes a particular species of fraud: intentionally lying to induce a victim into a transaction that will cost her money or property. As Judge Learned Hand put it, "[a] man is none the less cheated out of his property, when he is induced to part with it by fraud, because he gets a quid pro quo of equal value."

> The "language of the wire fraud statute" is undeniably "broad." But Congress enacted the wire fraud statute, and it is up to Congress—if it so chooses—to change it.
>
> * * *
>
> Fraudulent inducement "has long been considered a species of actionable fraud." Because the Third Circuit's judgment comports with § 1343, we affirm it.

*Kousisis*, 605 U.S. at 134–35 (citations omitted).

Even before the Supreme Court's most recent pronouncement, federal courts had rejected federalism concerns outside of the honest services fraud context where a violation of a state rule, as contained in the indictment here, is alleged to prove the defendant's intent to defraud in a wire fraud case involving money or property:

> We also conclude that the Reeds' prosecution did not impermissibly step on principles of federalism. *McDonnell* concerned a statute that, read broadly, might chill permissible official-constituent interactions. While the Supreme Court's narrow reading was informed by a broader reading's challenge to principles of federalism, it did not suggest that federal criminal law may never overlap with state regulation of governmental activity. We agree with the district court that "the federal government, in this case, enforced federal law—namely the federal fraud statute—and used state law only to prove mens rea and donor expectations." While state governments certainly have "the prerogative to regulate the permissible scope of interactions between state officials and their constituents," those state officials simultaneously must comply with federal fraud statutes. In other words, if Reed's expenditures were legal under state law, the funding for the expenditures could nonetheless have been obtained fraudulently under federal law—and if Reed's expenditures were illegal under state law, the federal fraud prosecution did not substitute for any discipline under state campaign finance law.
>
> We pause to observe that our holding here is consistent with our fellow circuits' reluctance to extend *McDonnell* beyond the context of honest services fraud and the bribery statute, even where prosecutions involved local or state government officials. This is not to say that the federalism or vagueness concerns raised in *McDonnell* could never have teeth beyond the specific statutes *McDonnell* interpreted, but rather that *McDonnell* should not be taken to prohibit prosecution for any federal crime that overlaps or intersects with state law or local governance.

*Reed*, 908 F.3d at 112–13 (footnotes omitted) (affirming federal fraud conviction of local official funneling money to child). *Reed* similarly rejected the defendant's due process "vagueness concerns" because the jury was not called upon to interpret state law but to determine whether the defendant had committed fraud. *Id.* at 111-12 (citing *United States v. Hoffman*, 901 F.3d 523, 541 (5th Cir. 2018)). Ammons's arguments notwithstanding, *McDonnell* does not prohibit her prosecution for wire fraud just because her scheme to defraud intersects with the State of Illinois's rules prohibiting her from paying her daughter out of state grants. Her motion to dismiss the wire fraud counts should be denied.

## II. Count Nine of the Indictment Sufficiently Alleges Making a False Statement

### A. The Indictment Tracks the Language of the False Statement Statute

The federal grand jury charged Ammons with making a false statement under 18 U.S.C. § 1001(a)(2):

> [W]hoever, in any matter within the jurisdiction of the executive . . . branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . . shall be fined under this title, imprisoned not more than 5 years . . . or both.

Count Nine of Ammons's indictment tracks the language of the statute, stating, in relevant part, that Carol Ammons:

> [W]illfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating to a Special Agent of the Federal Bureau of Investigation that she had no knowledge regarding a conflict of interest with Hood Vote Neighborhood Transformation paying her daughter from a state grant, when AMMONS knew full well that individuals from the State of Illinois and Hood Vote . . . had previously discussed the conflict of interest with AMMONS.

R. 1, Count Nine. The false statement count tracks the language of the false statement statute. Ammons has not identified any relevant portion of the statute that is not alleged in the indictment. Her motion to dismiss that count is without merit. *See White*, 610 F.3d at 959.

B. The Indictment Includes the Elements of Making a False Statement

The Seventh Circuit defines the elements of wire fraud as follows:

> 1. The defendant made a statement or representation; and
>
> 2. The statement was false, fictitious, or fraudulent; and
>
> 3. The statement or representation was material; and
>
> 4. The defendant acted knowingly and willfully; and
>
> 5. The defendant made the statement or representation in a matter within the jurisdiction of the executive branch of the government of the United States.

Bauer Pattern Instructions, 18 U.S.C. §§ 1001(a)(2) Making a False Statement or Representation – Elements, p. 465.

Ammons's motion to dismiss does not identify any element that is not alleged in the indictment. Instead, she simply argues that her statement was not false, and therefore, it also was not material. More specifically, she argues that "there was no conflict of interest under Illinois law," and therefore, "her alleged denial of knowing that was a conflict of interest" could not be false. R. 54 at 16. She continues, "as there was no conflict of interest, denial of knowing about a nonexistent conflict of interest could not be material to any conceivable investigation." *Id.*

Ammons's motion to dismiss on these grounds is without merit. When evaluating the sufficiency of an indictment, a court focuses only on its allegations, which it must accept as true. *Nayak*, 769 F.3d at 979; *Moore*, 563 F.3d at 586. The indictment alleges both that Ammons's statement was false and that it was material. That is sufficient to state a claim for making a false statement.

Moreover, Ammons compounds the same error that she makes regarding the wire fraud charge by claiming "there was no conflict of interest under Illinois law." R 54 at 16. Count Nine does not allege that she falsely stated or represented that there was no conflict of interest under Illinois law. Count Nine alleges that she falsely stated and represented that "she had *no knowledge* regarding a conflict of interest with Hood Vote Neighborhood Transformation paying her daughter from a state grant." (emphasis added). At trial, she will be free to argue that the United States cannot prove that she had knowledge regarding a conflict of interest and that individuals from the State of Illinois and Hood Vote discussed the conflict of interest with her. A motion to dismiss, however, is not the proper "means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *Moore*, 563 F.3d at 585-86.

Ammons's argument that the indictment does not sufficiently allege materiality likewise fails. "False statements made to conceal a fraud are no less material for the purposes of § 1001 than false statements designed to induce fraud." *United States v. Brack*, 747 F.2d 1142, 1150 (7th Cir. 1984) (affirming district court's denial of motion to dismiss false statement charge). Her argument appears to be that she allegedly did not believe there was a conflict of interest in employing her daughter, so telling the agent she had no

knowledge of a conflict of interest was immaterial. She is wrong. The Seventh Circuit has noted that, even where a defendant believes their underlying conduct is permissible, making a false statement regarding that conduct is a violation of Section 1001. *See United States v. Lupton*, 620 F.3d 790, 806 (7th Cir. 2010) (affirming Section 1001 conviction because "[i]t has nothing to do with the legality of the underlying conduct about which the defendant spoke"). Making a false statement to an FBI special agent during an investigation is regularly found to be material under Section 1001:

> To be "material" for purposes of 18 U.S.C. § 1001, a statement "must have a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed." We do not require the statement to actually influence the agency to which it was directed, or even that the agency rely on the statement in any way. Instead, we have recognized, like many of our sister circuits, that a frequent aim of false statements made to federal investigators is to cast suspicion away from the declarant, "which in the ordinary course would have an intrinsic capability . . . to influence an FBI investigation." When statements are aimed at misdirecting agents and their investigation, even if they miss spectacularly or stand absolutely no chance of succeeding, they satisfy the materiality requirement of 18 U.S.C. § 1001.

*Lupton*, 620 F.3d at 806–07 (citations omitted). Count Nine sufficiently alleges each and every element of making a false statement under Section 1001, including that her identified statement to the FBI was both false and material.

## III. Count Ten of the Indictment Sufficiently Alleges a Conspiracy to Obstruct Justice

### A. The Indictment Tracks the Language of the Statute

The federal grand jury charged Ammons with conspiring with her husband to obstruct justice in violation of 18 U.S.C. § 1512(k):

> Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

The identified underlying offense that was the object of the conspiracy was engaging in misleading conduct in violation of Section 1512(b)(3), which states in relevant part:

> Whoever knowingly . . . engages in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer . . . of the United States of information relating to the commission or possible commission of a Federal offense . . . shall be fined under this title or imprisoned not more than 20 years, or both.

Count Ten of Ammons's indictment tracks the language of these statutes, stating, in relevant part, that Ammons, along with her husband:

> [K]nowingly and intentionally conspired with each other and others, both known and unknown to the grand jury, to engage in misleading conduct toward another person with the intent to hinder and prevent the communication to a federal law enforcement officer of information relating to the commission and possible commission of a federal offense, namely, wire fraud as set forth in Counts One through Eight of this Indictment.

R. 1, Count Ten. The conspiracy to obstruct justice count tracks the language of both identified obstruction statutes. Count Ten then goes on to identify multiple overt acts committed in furtherance of the conspiracy. Once again, the challenged count tracks the language of the statutes. Ammons's motion to dismiss Count Ten is without merit. *See White*, 610 F.3d at 959.

### B. The Indictment Includes the Elements of a Conspiracy to Obstruct Justice

The Seventh Circuit defines the elements of conspiracy as follows:

1. The conspiracy as charged in Count 10 existed; and

2. The defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy.

Bauer Pattern Instructions, 4.08(B) Conspiracy – No Overt Act Required, p. 104.[8] First, Count Ten re-alleges and incorporates the nineteen paragraphs of the wire fraud allegations set forth in Counts One and Two of the Indictment. Then, it alleges that from about May 21, 2024, until at least June 15, 2025, Ammons knowingly and intentionally conspired with her husband to engage in misleading conduct, before listing multiple overt acts committed in furtherance of the conspiracy. A conspiracy indictment needs not allege more to state an offense, as the Seventh Circuit has held in the drug trafficking context:

> This court has consistently held that an indictment charging an offense under 21 U.S.C. §§ 841(a) and 846, which are the statutes the defendants were charged with violating in this case, fulfills the requirements of Rule 7(c)(1) and of the constitution "if it sets forth the existence of a drug conspiracy, the operative time of the conspiracy, and the statute violated." *United States v. Singleton*, 588 F.3d 497, 499–500 (7th Cir. 2009). The indictment here contains each of the required elements and was sufficient to notify Lockhart of what the government intended to prove. Although it does not allege facts addressing any particular drug transactions, our cases do not require such specificity.

[8] Ammons's motion to dismiss claims that Section 1512(k) also requires an overt act, relying on a Fifth Circuit case. R. 54 at 18-19. The plain language of Section 1512(k) does not require an overt act. Moreover, this Court previously instructed a jury as set forth in the Bauer Pattern Instructions above, without requiring an overt act, in a trial alleging a violation of Section 1512(k). *United States v. Sheffler*, No. 3:19-cr-30067, Docket #398 at 57 (C.D. Ill. Aug. 23, 2022). The Seventh Circuit affirmed the conviction, which was challenged on appeal, although without any discussion of the jury instruction. *United States v. Sheffler*, 125 F.4th 814, 826 (7th Cir.), *reh'g denied*, No. 23-1557, 2025 WL 416430 (7th Cir. Feb. 6, 2025), and *cert. denied*, 145 S. Ct. 2785, 222 L. Ed. 2d 1080 (2025). Ammons's motion to dismiss can be denied without resolving this issue, however, given that the indictment alleges several overt acts.

*United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013). The indictment sufficiently alleges the existence of a conspiracy. After all, "[a]n unlawful agreement to obstruct justice often must be inferred from the circumstances." *United States v. Volpendesto*, 746 F.3d 273, 286–87 (7th Cir. 2014) (affirming conviction for conspiracy to obstruct justice under Section 1512(k)).

Nonetheless, Ammons's argument is that Count Ten says too much. She argues that, by alleging overt acts committed by her co-conspirator while she was present, the charge now becomes insufficient as to her because "mere presence is not sufficient to allege a conspiracy." R. 54 at 19. She ignores, however, that before identifying several overt acts committed by her husband, Count Ten alleged that Ammons "knowingly and intentionally conspired" with her husband "to engage in misleading conduct" and then identifies an overt act committed by her.

With the conspiracy sufficiently alleged, providing additional details through the listing of overt acts of a co-conspirator, whether she was present or not, does not make the charge defective as to her. That would be a strange result, indeed, since: (1) she is responsible for acts committed by her co-conspirators in furtherance of the conspiracy, *Pinkerton v. United States*, 328 U.S. 640 (1946); and (2) Count Ten also cites the federal aiding and abetting statute, 18 U.S.C. § 2, which states that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." A jury may always convict a defendant as an aider and abettor where notice is given, as here, by citation to Section 2. *See, e.g., United States v. Clark*, 140 F.4th 395, 411 (7th Cir. 2025). To finally

bring the point home, Ammons states in her own motion that the United States must prove "that an overt act was taken by *one* of the conspirators . . ." R. 54 at 18-19 (emphasis added). Thus, the indictment need not allege that Ammons herself took any overt act to sufficiently allege a conspiracy to obstruct justice, even though it does by alleging that she made a false statement to an FBI agent on May 24, 2024. Ammons's argument to the contrary ignores the plain language of the relevant statutes and conspiracy and aider and abettor law.

Lastly, Ammons claims that Count Ten fails to identify the "federal investigation" that she conspired to obstruct. R. 54 at 20-21. Yet, Section 1512(b)(3) does not require a federal investigation; it requires an intent to hinder communication to a law enforcement officer of information relating to the commission of a federal offense. And Count Ten of the indictment could not be clearer about the federal offenses at issue: Count Ten identifies those offenses as "wire fraud as set forth in Counts One through Eight of this Indictment." R. 1, Count Ten. Ammons's argument that the indictment is defective for lack of specificity regarding the investigation at issue is frivolous.

## CONCLUSION

The indictment charging Carol Ammons contains a plain, concise, and definite written statement of the essential facts constituting the offenses of wire fraud, making a false statement, and conspiracy to obstruct justice. For each count, the indictment cites and tracks the relevant statutes and unambiguously states the elements of the crime charged. Looking at the indictment on a practical basis in its entirety, rather than in a

hyper technical manner, the indictment adequately apprises Ammons of the nature of the charges so that she may prepare a defense. Ammons has not demonstrated prejudice from any alleged deficiency in the indictment.

Accepting the indictment's allegations as true, which the Court must at this stage, Ammons's motion to dismiss the indictment is without merit. Ammons's motion to dismiss ignores the allegations that her wire fraud scheme involved personally receiving illegal cash kickbacks from both her campaign fund and state grants. It incorrectly treats the remaining allegations as honest services fraud under 18 U.S.C. § 1346 rather than how the grand jury alleged them – as part of her overarching wire fraud scheme under 18 U.S.C. § 1343. Her motion to dismiss must be denied.

WHEREFORE, the United States of America respectfully requests that this Court deny the defendant's motion to dismiss the indictment.

Respectfully submitted,

GREGORY M. GILMORE
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217-373-5891
eugene.miller@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all CM/ECF participants.

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217-373-5891
eugene.miller@usdoj.gov